IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA PEDRO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MILLENNIUM PRODUCTS, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-05253-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY; TRANSFERRING ACTION TO CENTRAL DISTRICT OF CALIFORNIA**<br><br>Re: Dkt. No. 32 |

Before the Court is the Motion to Stay, filed March 11, 2016, by defendants Millennium Products, Inc. and George Thomas "GT" Dave (collectively, "Millennium"). Defendant Whole Foods Market California, Inc. ("Whole Foods") has filed a statement of non-opposition. Plaintiffs Nina Pedro and Rosalind Lewis have filed opposition, to which Millennium has replied. The matter came on regularly for hearing on April 15, 2016. Marcio Valladares of Morgan & Morgan Complex Litigation Group appeared on behalf of plaintiffs. Scott M. Voelz of O'Melveny & Myers LLP appeared on behalf of Millennium. Kevin Bringuel of LTL Attorneys LLP appeared on behalf of Whole Foods. Having considered the papers submitted in support of and in opposition to the motion, as well as the arguments of counsel at the hearing, the Court rules as follows.

**BACKGROUND**

Plaintiffs Nina Pedro and Rosalind Lewis are residents of California and Washington, respectively, who seek to represent a class comprised of consumers in the United States who purchased, "within two years before the date this suit was filed, any of the kombucha products manufactured by [d]efendants."[1] (FAC ¶¶ 4, 8, 113.) Defendant

---

[1] Kombucha is "an effervescent fermented drink of sweetened black tea." (See

1  Millennium Products, Inc. manufactures "two separate lines of kombucha," the
2  "Enlightened" line, marketed "as containing less than 0.5% alcohol," and the "Classic"
3  line, marketed "as containing in excess of 0.5% alcohol." (Id. ¶¶ 33-35.)[2] Defendant GT
4  Dave is the founder and chief executive officer of Millennium Products, Inc. (Id. ¶¶ 17,
5  28). Defendant Whole Foods sells Millennium Products, Inc.'s kombucha to consumers.
6  (Id. ¶ 18).

By the instant motion, Millennium seeks a stay of the above-titled action pending resolution of another case, Retta v. Millennium Products, Inc. (hereinafter, "Retta"), filed March 11, 2015, in the Central District of California,[3] and in which the plaintiffs therein seek to represent a class "consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Enlightened Kombucha." (See Faria Decl. Ex. A ("Retta Compl.") ¶ 72.) The operative complaint in Retta, the Fourth Amended Complaint, asserts, as against Millennium products, Inc. and Whole Foods, the following four causes of action: (1) violation of the California Consumer Legal Remedies Act, (2) violation of the California Unfair Competition Law ("UCL"), (3) violation of the California False Advertising Law, and (4) violation of the New York Deceptive and Unfair Trade Practices Act.[4]

Each cause of action asserted in Retta is based on claims that Millennium's kombucha is mislabeled with respect to both its alcohol and antioxidant content. Specifically, the Retta complaint alleges that the labels on Millennium's kombucha bottles (1) pose a "serious health hazard" to consumers, as the kombucha contains more that

---

First Amended Complaint ("FAC") ¶ 29.)

[2] (See also id. ¶ 36 (referencing http://www.synergydrinks.com/, which identifies Millennium's four product types: "GT's Enlightened Kombucha," "Enlightened Synergy," "GT's Classic Kombucha," and "Classic Synergy").)

[3] Additionally, in its reply brief Millennium takes the position that the Court should, in the alternative, transfer the case to the Central District of California.

[4] The Retta plaintiffs also purport to represent New York and California subclasses of such consumers.

1  0.5% alcohol by volume, but the labels lack a "warning concerning alcoholic beverages"
2  and "represent[] that Enlightened Kombucha only has a 'trace amount of alcohol'" (Retta
3  Compl. ¶¶ 90, 104, 116, 124), and (2) violate Food and Drug Administration regulations
4  regarding antioxidant content claims (id. ¶¶ 89, 103, 115, 123).  According to the Retta
5  complaint, the alleged excess alcohol in Millennium's kombucha results from the
6  products' continued fermentation "post-bottling."[5]  (Id. ¶ 22.)

7        The instant action (hereinafter, "Pedro") was filed on November 17, 2015, and the
8  operative complaint, the First Amended Complaint, alleges the following three causes of
9  action: (1) breach of the California Consumer Warranty Act, (2) violation of the UCL, and
10  (3) violation of the California Consumer Legal Remedies Act.

11        All three causes of action are, as in Retta, based on a claim that Millennium's
12  kombucha is mislabeled with respect to its alcohol content; the first two causes of action
13  are also based on a claim that Millennium's bottles of kombucha leak.  Specifically, the
14  Pedro complaint alleges that (1) the "warning labels on [d]efendants' kombucha
15  beverages fail[] to adequately and reasonably warn the consumers about the specific
16  alcohol content contained in the beverages" (FAC ¶ 45), and (2) the packaging cannot
17  withstand the internal pressure exerted by the high levels of carbon dioxide "byproduct[]"
18  in the kombucha, causing it to "leak, and resulting [in] spoilage" (id. ¶ 6).  According to
19  the Pedro complaint, the alleged excess alcohol and leakage both result from the
20  products' continued fermentation after bottling, which the Pedro complaint refers to as
21  "secondary fermentation."[6]

---

[5] As alleged therein: "Kombucha is made of tea that ferments for up to a month while a 'blob' of bacteria known as 'scoby' (for symbiotic colony of bacteria and yeast) floats on top.  The scoby purportedly 'eats the sugar, tannic acids, and caffeine in the tea, and creates a cocktail of live microorganisms.'  Basic chemistry explains that the scoby converts the sugar into carbon dioxide and alcohol."  (Retta Compl. ¶ 13.)  As further alleged: "While Millennium claims that it has found a way to brew its Enlightened line of products such that the products never cross the 0.5 percent alcohol threshold post-bottling, several rigorous independent tests show that each of the beverages in the Enlightened line contains greater than 0.5 percent alcohol by volume. . . ."  (Id. ¶ 22.)

[6] (See, e.g., FAC ¶ 119(a)(2) (alleging "kombucha beverages . . ., due [to] the SECONDARY FERMENTATION process, leak from the cap once the carbon dioxide

3

**DISCUSSION**

Millennium argues that the Court should stay or transfer the instant action pursuant to the "first-to-file rule." (See Def.'s Mot. at 1:12.)  Alternatively, Millennium argues that the Court should grant a stay pursuant to its "inherent power to manage its own docket." (See id. at 1:18.)

**A.    Whether the First-to-File Rule Applies**

The first-to-file rule is a doctrine of federal comity that "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 623 (9th Cir. 1991).  The rule "is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." Church of Scientology of Calif. v. U.S. Dept. of Army, 611 F.2d 738, 750 (9th Cir. 1979).  Although its application is discretionary, the rule "normally serves the purpose of promoting efficiency well and should not be disregarded lightly." Id.  In determining whether the first-to-file rule applies, a court considers the "chronology of the lawsuits, similarity of the parties, and similarity of the issues." Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc., 787 F.3d 1237, 1240 (9th Cir. 2015).

**1.    Chronology**

As the name of the rule implies, the dismissal or stay is in favor of, or the transfer is to, the court presiding over the earlier-filed lawsuit. See, e.g., Alltrade, 946 F.2d at 623.  Here, although Retta was filed more than eight months prior to the filing of Pedro, plaintiffs argue that it is "equally appropriate to transfer the Retta matter to this Court" because "both Retta and Pedro are first-in-time as to their respective issues (alcohol vs waste and safety)." (See Pl.'s Opp. at 9:26-28.)  The Court is not persuaded.  Even

---

levels in the bottle exceed[] the pressure tolerance of the cap"); ¶ 119(a)(5) (alleging "[k]ombucha beverages . . . , due to the SECONDARY FERM[E]NTATION process, contain alcohol in excess of 0.5% and are not properly labeled as such in violation of both State and Federal law") (emphases in original).)

4

disregarding the argument's flawed premise that Pedro lacks a claim based on mislabeled alcohol content, the inquiry at this point of the analysis is not concerned with the issues raised in the respective complaints, but rather with "which lawsuit was filed first." See Kohn, 787 F.3d at 1240 (emphasis added).  As noted, Retta was filed on March 11, 2015, more than eight months prior to the date Pedro was filed. Consequently, Retta was filed first.

Accordingly, the first prerequisite is satisfied, and the Court next considers the parties' respective arguments as to similarity of the parties.

### 2. Similarity of Parties

#### a. Legal Standard for Comparing Plaintiffs in Putative Class Actions

As an initial matter, plaintiffs contend the Court, in considering whether the plaintiffs in a class action are sufficiently similar, should compare the named plaintiffs rather than the putative classes.[7]  The Court again is unpersuaded, for the following reasons.

First, the majority of district courts in the Ninth Circuit that have applied the first-to-file rule in the context of a class action have compared the putative classes rather than the named plaintiffs.  See, e.g., Clay v. Chobani, LLC, No. 14-2258, at 10 (S.D. Cal. Aug. 10, 2015); Cadenasso v. Metro. Life Ins. Co., 2014 WL 1510853, at *10 (N.D. Cal. 2014); Hilton v. Apple, Inc., 2013 WL 5487317, at *7 (N.D. Cal. 2013); Ruff v. Del Monte Corp., 2013 WL 1435230, at *3 (N.D. Cal. 2013); Ross v. U.S. Bank Nat'l Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008); Weinstein v. Metlife, Inc., 2006 WL 3201045, at *4 (N.D. Cal. 2006).[8]

---

[7] With the exception of one defendant, George Thomas "GT" Dave ("Dave"), named in Pedro alone, the defendants in the two actions are identical.  Plaintiffs do not argue the inclusion of Dave in Pedro defeats the similarity-of-parties requirement.  See Kohn, 787 F.3d at 1240 (holding omission of single named defendant from one of two multiple-defendant actions "does not defeat application of the first-to-file rule").

[8] Plaintiffs' sole citation in support of their position is an order issued in Le v. PriceWaterhouseCoopers LLP, 2008 WL 618938, at *1 (N.D. Cal. 2008), by which this

5

Second, comparison of the putative classes appears to have been implicitly endorsed by the Ninth Circuit.  Specifically, in support of its holding that "the first-to-file rule does not require exact identity of parties," Kohn cited Adoma v. Univ. of Phoenix, Inc., 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010), a decision in which the district court considered the applicability of the first-to-file rule in the context of a class action brought by a different named plaintiff than the named plaintiff in an earlier-filed class action, and concluded the "classes, and not the class representatives, are compared." See id.; Kohn, 787 F.3d at 1240.

Third, as one district court has observed, "[i]f the first-to-file rule were to require a strict comparison only of the named plaintiffs in the two actions, the rule would almost never apply in class actions." See Hilton, 2013 WL 5487317, at *7.  Given that class actions are "frequently complex affairs which tax judicial resources," and thus constitute "the very cases in which the principles of avoiding duplicative proceedings and inconsistent holdings are at their zenith," such "result would be in direct conflict to the purposes of the first-to-file rule." Id.

For all of the above reasons, the Court finds it appropriate to compare the putative classes in Retta and Pedro.

### b.     Similarity of the Putative Classes in Retta and Pedro

The complaints in both Retta and Pedro assert claims on behalf of a nationwide class of consumers of Millennium's kombucha.  Although, in their opposition, plaintiffs did not argue that the composition of the respective putative classes in Retta and Pedro are

---

Court denied without prejudice a first-to-file motion, where the named plaintiffs in the two actions were different and a motion to certify a class in the earlier filed action had been heard but not yet decided.  As the Court stated on the record at the hearing on the instant motion, however, the distinction between a putative and certified class was not raised in Le, and the procedural posture of that case and the instant case are distinguishable. Moreover, in the same order on which plaintiffs rely, the Court directed the parties to show cause why the case should not be transferred pursuant to 28 U.S.C. § 1404, and subsequently transferred the case to the district in which the earlier-filed action was pending.

1  dissimilar,[9] at the hearing, plaintiffs pointed out that the putative Retta class is limited to
2  purchasers of "Enlightened" beverages, whereas the putative Pedro class extends more
3  broadly to purchasers of either "Enlightened" or "Classic" beverages.
4      Any such distinction is not, however, dispositive. As the Ninth Circuit has held, the
5  first-to-file rule requires "only substantial similarity of parties," not "exact identity of
6  parties." Kohn, 787 F.3d at 1240. Applying this principle, district courts have required
7  only that the classes "represent at least some of the same individuals." See Clay, No.
8  14-2258, at 10 (finding parties sufficiently similar, where class in one action included all
9  United States consumers, whereas class in other action included only California
10 consumers); Adoma, 711 F. Supp. 2d at 1144-45, 1148 (finding similarity-of-parties
11 "prerequisite" was "satisfied," where one action was brought on behalf of nationwide class
12 of "all academic and enrollment counselors employed by defendants," and other action
13 was brought on behalf of "all persons in California who worked as enrollment
14 counselors").
15     Plaintiffs have neither identified a case in which a more restrictive standard was
16 applied, nor explained why the Court should adopt a stricter standard here. As in the
17 above-cited cases, the classes in Retta and Pedro are sufficiently similar, as the Pedro
18 plaintiffs include all of the Retta plaintiffs, plus those consumers who purchased one or
19 more bottles of Millennium's "Classic" kombucha.
20     Accordingly, the second prerequisite is met, and the Court next considers the
21 similarity of the issues presented in Retta and Pedro.
22     **3.  Similarity of Issues**
23     As with the parties, the issues in both cases likewise "need not be identical, only
24 substantially similar." Kohn, 787 F.3d at 1240. "To determine whether two suits involve

---

[9] Plaintiffs did argue in their opposition, as well as at the hearing, that the classes are dissimilar because Pedro, unlike Retta, includes a request for injunctive relief. Such alleged difference, however, is properly addressed in the context of the third factor, similarity of the issues.

7

1  substantially similar issues, [courts] look at whether there is substantial overlap between
2  the two suits." Id. at 1241.

3  Retta and Pedro overlap as to the alcohol mislabeling claim, but each action has
4  one additional basis for liability that the other does not have, namely, the antioxidant
5  claim in Retta and the leakage claim in Pedro. Plaintiffs contend the presence of the
6  leakage claim in Pedro renders the first-to-file rule inapplicable because "the gravamen of
7  Retta is that [d]efendants sell a product that is improperly labeled," and, according to
8  plaintiffs, although Pedro does "include some discussion of alcohol" mislabeling, the
9  "waste and product safety complaints are at [its] heart." (See Pl.'s Opp. at 6:17-7:18.)

10  At the outset, the Court notes, as discussed at the hearing, plaintiffs' assessment
11  of the importance of the alcohol mislabeling claim in Pedro is inaccurate. The alcohol
12  claim is featured just as prominently in the Pedro complaint as is the leakage claim, if not
13  more so, given that two of the asserted causes of action are predicated on both alcohol
14  mislabeling and leakage, and the third is predicated solely on alcohol mislabeling.

15  Moreover, where claims in the earlier and later-filed lawsuits implicate "common
16  fact[s]," see Adoma, 711 F. Supp. 2d at 1149, courts have found those lawsuits present
17  similar issues.   In Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093 (N.D. Cal.
18  2006), for example, the district court rejected an argument that a tort claim, arising out of
19  contract negotiations and asserted in a later-filed action for fraud and breach of contract
20  but not in the earlier-filed action for breach of contract alone rendered the two lawsuits
21  dissimilar. See id. at 1099 (finding similarity of issues, where two suits were "intimately
22  intertwined" due to shared "factual and legal considerations" and "key dispute").

23  Likewise, the district court in Adoma considered whether the case before it, which
24  included claims for unpaid, off-the-clock overtime based on an alleged "dual bookkeeping
25  system," as well as an additional claim that "free tuition to employees . . . was not
26  included in determining the employees' rate of pay," substantially overlapped with an
27  earlier-filed suit for uncompensated overtime brought on behalf of a similar set of
28  employees who did "not proceed on a dual bookkeeping" claim or a free tuition claim.

8

711 F. Supp. 2d at 1145, 1148-49.  Reasoning that the "central question" in both cases was "whether a class is entitled to compensation for unpaid, off-the-books overtime," and further, that it could not resolve the central question "without addressing the common factual issues implicated in both cases," the district court concluded that the issues presented were similar, despite the fact that the later-filed action exceeded the scope of the first-filed action.  See id. at 1149.  As with the second Kohn factor, similarity of parties, the Adoma court's reasoning as to the third factor, similarity of issues, appears to have been implicitly endorsed by the Ninth Circuit in Kohn, which again cited Adoma, in this instance for the proposition that "the issues in both cases also need not be identical." See Kohn, 787 F.3d at 1240-41.

Here, in addition to sharing the alcohol mislabeling claim, Retta and Pedro share a "central question" and "common factual" underpinnings.  See Adoma, 711 F. Supp. 2d at 1149.  In particular, the plaintiffs in both Retta and Pedro raise the question of whether their respective consumer classes are entitled to compensation because Millennium's kombucha products failed to meet reasonable consumer expectations as to qualities that were both expressly and impliedly promised by Millennium.  Moreover, as defendants point out, that question cannot be resolved as to the alcohol mislabeling and leakage claims without addressing common factual issues, such as the composition of Millennium's kombucha and the chemistry of kombucha's secondary fermentation process, the latter of which produces both the excess alcohol that allegedly causes the products to be mislabeled and the carbon dioxide that allegedly causes the leakage.

Relying on Adoma, plaintiffs argue that the two actions are dissimilar because the plaintiffs in Retta seek only damages, while the plaintiffs in Pedro seek both damages and injunctive relief.  Plaintiffs' argument fails at the outset, however, because the Retta plaintiffs also seek injunctive relief.  (See Retta Compl. ¶ 98.)  Moreover, the Ninth Circuit has found "the first to file rule is applicable" where "two actions differ only as to the remedy sought."  Pacesetter Systems, 678 F.2d at 94, 95-96 (upholding district court's application of first-to-file rule where earlier-filed action sought "injunctive relief and

damages" and later-filed action sought "declaratory judgment").

Lastly, at the hearing, plaintiffs pointed out that in Adoma, the court determined not to dismiss, stay, or transfer the later-filed case, based in part on the fact that the plaintiffs sought relief that was not sought in the earlier-filed action. See Adoma, 711 F. Supp. 2d at 1150.[10]  Prior to such determination, however, the Adoma court found the issues presented by the two actions, despite any differences as to the relief sought, were similar, and that "the first-to-file rule might well apply in [the] case." Id. at 1149.  Nonetheless, noting "the doctrine is discretionary," the court then went on to consider an "exception" based on "the interests of equity," and, ultimately, found the plaintiffs therein had demonstrated a number of circumstances existed, the "totality" of which weighed against application of the rule. Id. at 1150.  Plaintiffs here have neither argued nor shown that the collective equities weigh against application of the rule.

As both Retta and Pedro implicate the alcohol mislabeling theory, raise the central question of defects in Millennium's kombucha, and implicate the underlying facts of secondary fermentation, the issues presented in the two cases are similar.  Accordingly, the third prerequisite is satisfied, and the first-to-file rule applies.[11]

**B.    Whether to Transfer or Stay the Case**

Having found the first-to-file rule applicable, the Court turns to the question of whether to "transfer [or] stay" the instant action. Alltrade, 946 F.2d at 623.  As discussed by the Court on the record at the hearing, a transfer is preferable to a stay, for several reasons.

First, a transfer would better serve the first-to-file doctrine's objectives of efficiency and avoiding inconsistent judgments.  If Pedro is transferred rather than stayed, the leakage and alcohol mislabeling claims, which have considerable factual overlap, could

---

[10] The Adoma plaintiffs sought relief under California law, "which requires entirely different calculations for overtime compensation." Id. at 1150.

[11] In light of such finding, the Court does not reach Millennium's alternative argument that the case should be stayed pursuant to the Court's inherent power.

1  be tried together rather than to two juries, and the alcohol mislabeling claims would only
2  have to be tried once.  Moreover, consolidating the cases before one tribunal is the only
3  way to ensure against inconsistent interlocutory rulings, as this Court will not be bound by
4  the rulings of the Retta court, see Cadenasso v. Metro. Life Insurance Co., 2014 WL
5  1510853, at *11 (N.D. Cal. 2014) (finding transfer, rather than stay, "most appropriate"
6  because decision of another district court "would not be binding"), and consolidating the
7  cases is the only way to ensure against inconsistent ultimate outcomes, as claim and/or
8  issue preclusion will not bar any members of the Pedro class who either purchased the
9  "Classic" version of Millennium's kombucha or chose to opt out of the Retta class, see
10 Richards v. Jefferson Cty., 517 U.S. 793, 794 (1996) (holding "it would violate the Due
11 Process Clause . . . to bind litigants to a judgment rendered in an earlier litigation to
12 which they were not parties and in which they were not adequately represented").

13       Second, if transferred, the leakage claim would proceed on a regular schedule
14 rather than languish in this district, awaiting litigation after Retta has concluded.

15       Third, stays are disfavored where, as here, the plaintiff seeks an award of
16 injunctive relief.  Cf. Lockyer v. Mirant Corp., 398 F. 3d 1098, 1112 (9th Cir. 2005) (noting
17 fact that plaintiff sought "injunctive relief against ongoing and future harm" weighed
18 against imposing stay); CMAX, Inc. v. Hall, 300 F.2d 265, 268-69 (9th Cir. 1962)
19 (upholding district court's imposition of stay, where stay would result, at worst, in "delay"
20 of plaintiff's receipt of "money damages").

21       Millennium in its motion argues that a transfer may be inefficient because Retta
22 has progressed somewhat further than Pedro.  Retta, however, remains in its early
23 stages.  As of the time of the filing of the instant motion, Whole Foods had not yet
24 answered the Retta complaint, and a review of the Retta docket shows that, although
25 said defendant has now moved to dismiss, such motion will not be heard until July 25,
26 2016.[12]

---

[12] Although a trial date has been set in Retta, at the hearing on the instant motion, the parties informed the Court that a deadline for the filing of a motion for class

11

1    Accordingly, the Court will transfer rather than stay the instant action.

## CONCLUSION

For the reasons stated above, Millennium's Motion to Stay is hereby GRANTED in part and DENIED in part, as follows.

1. To the extent Millennium seeks a stay of the above-titled action, the motion is hereby DENIED.

2. To the extent Millennium seeks a transfer of the above-titled action, the motion is hereby GRANTED, and the above-titled action is hereby TRANSFERRED to the United States District Court for the Central District of California.

**IT IS SO ORDERED.**

Dated:  May 27, 2016

MAXINE M. CHESNEY
United States District Judge

---

certification had not, as of that date, been set.